EDWARD H. ASHCROFT *vs.* EASTERN RAILROAD COMPANY.

Suffolk. Nov. 22, 1878. — Jan. 21, 1879. ENDICOTT & LORD, JJ., did not sit.

This clause in a deed of land to a railroad corporation, "reserving to myself the right of passing and repassing and repairing my aqueduct logs forever, through a culvert six feet wide and rising in height to the superstructure of the railroad, to be built and kept in repair by said company," operates as a reservation, and not as an exception, and vests in the grantor an estate for life only.

BILL IN EQUITY, filed June 13, 1878, alleging that, on October 26, 1837, John Lovejoy conveyed to the defendant a parcel of land in Lynn, over which its railroad has been located, consisting of a strip twenty-eight feet in width; that said parcel has ever since been owned and used by the defendant; that, by the terms of the deed, Lovejoy created and reserved, for the benefit

of his adjoining land, an easement in the land, namely, the right to receive water from a spring by aqueduct logs, through a culvert across the land conveyed to the defendant, on to the adjoining land which was then owned by Lovejoy; that the plaintiff by mesne conveyances, had become the owner of said adjoining land and buildings of Lovejoy, for the benefit of which the easement was reserved, which easement was conveyed with the land; that Lovejoy and his grantees, including the plaintiff, have used, without interruption or objection on the part of the defendant, the culvert and aqueduct for more than twenty years prior to the acts of the defendant hereinafter complained of; that the premises belonging to the plaintiff have been used for many years for morocco and tanning business, requiring a large supply of pure water, which, prior to the acts hereinafter complained of, has always been supplied by the aqueduct running through the culvert under the railroad; that in August 1870, the defendant caused the culvert, under which the aqueduct logs were laid, to be filled with rocks and other obstructions, the weight and force of which crushed the logs, so that the water, which should have been conducted by them into and upon the premises of the plaintiff, overflowed, wasted and flooded said premises, and caused the tenant thereof to leave; that this overflow of water was adjudged by the board of health of Lynn to be a public nuisance, in consequence of which the plaintiff was obliged to lay a drain to conduct away the water at great expense; that while these obstructions were being put in, and since then, the plaintiff frequently protested to the defendant against its action, and has repeatedly notified the defendant of the interference with his easement and injury to his land, and has constantly demanded of it the restoration of his rights; but it has wholly neglected and refused to remove the obstructions and restore his rights; that, in consequence of these acts of the defendant, the plaintiff is wholly deprived of the use and enjoyment of the aqueduct and the water therefrom, and has been prevented from carrying on his business; that the defendant is insolvent and unable to pay its debts in full, and all of its property is mortgaged to creditors for a much larger sum than its value, although the defendant is still in the legal possession of the property, and it has no property which can be come at to be attached or taken

on execution in an action at law; that the acts of the defendant are an appropriation of a privilege, right and easement appurtenant to the plaintiff's land, of a continuous and permanent nature; and that the plaintiff has not a plain, adequate and complete remedy at law.

The prayer of the bill was that the defendant might be ordered to remove the obstructions, and to restore the aqueduct to its usual and former condition; that it might be decreed to pay to the plaintiff a sum of money sufficient to compensate him for the damage done; that it might be perpetually restrained from obstructing or in any way interfering with the plaintiff's aqueduct; and for further relief.

The defendant filed a plea alleging that the reservation in the deed of John Lovejoy to the defendant, dated October 26, 1837, was in the words following, and not otherwise: "Reserving to myself the right of passing and repassing, and repairing my aqueduct logs forever, through a culvert six feet wide and rising in height to the superstructure of the railroad, to be built and kept in repair by said company; which culvert shall cross the railroad at right angles with the southeasterly line of John Alley, 3d's, land, seventy-four feet west of the northeasterly line of my land, measuring on the centre of the railroad;" and also alleging that John Lovejoy died on September 12, 1876.

Hearing before *Ames*, J., upon the bill and plea, who reserved the question of the sufficiency of the plea for the determination of the full court.

*J. P. Treadwell*, for the plaintiff.

*R. Olney*, for the defendant.

MORTON, J.   The plaintiff's right to maintain this suit depends upon the construction of the clause in the deed recited in the defendant's plea.

We are of opinion that this clause must operate as a reservation, or by way of implied grant.   The operation of an exception in a deed is to retain in the grantor some portion of his former estate, which by the exception is taken out of or excluded from the grant; and whatever is thus excluded remains in him as of his former right or title, because it is not granted. A reservation or implied grant vests in the grantor in the deed some new right or interest not before existing in him.   Shep.

Touchst. 80. *Stockbridge Iron Co.* v. *Hudson Iron Co.* 107 Mass. 290.

.The clause we are considering does not merely reserve to Lovejoy a right of way and of maintaining aqueduct logs through the land granted. The privilege which the parties intended should vest in him was the right of passing and repassing, and of maintaining his aqueduct logs through a culvert to be built and kept in repair by the grantee. The provision that the grantee shall build and keep in repair the culvert is an essential part of the grant, and clearly indicates that the intention of the parties was to confer upon the grantor a new right not previously vested in him, and which, therefore, could not be the subject of an exception.

It is well settled that, generally, the same rules of construction apply to a reservation or implied grant as to an express grant. In this case, the words used were, "reserving to myself the right of passing and repassing, and repairing my aqueduct logs forever through a culvert." This gave only an estate for life to Lovejoy. To create an estate of inheritance by deed to an individual, the land must be conveyed to the grantee and his heirs, and these necessary words of limitation cannot be supplied by other words of perpetuity. As stated by Wilde, J., in *Curtis* v. *Gardner*, 13 Met. 457, "a grant to a man to have and to hold to him forever, or to have and to hold to him and to his assigns forever, will convey only an estate for life." See also *Dennis* v. *Wilson*, 107 Mass. 591.

It is not necessary to decide whether the easement created by the reservation was appurtenant to the remaining land of Lovejoy. Assuming it to have been so, this could not have the effect to extend its duration. Lovejoy might assign it, if appurtenant, by a deed of the remaining land, but it would expire with his life, whether assigned or retained by him.

It follows from these considerations, that this bill cannot be maintained  Lovejoy having died before this suit was commenced, the easement had ceased to exist, and the plaintiff is not entitled to the relief prayed for in the bill. The defendant's plea, therefore, is sufficient,        *Bill dismissed.*