Edward T. FREDERICK, et al.

v.

CONSOLIDATED WASTE SERVICES, INC.

Supreme Judicial Court of Maine.

Argued March 6, 1990.
Decided April 18, 1990.

Albert Bernier (orally), Marden, Dubord, Bernier & Stevens, Waterville, for plaintiffs.

Charles E. Gilbert, III (orally), Gilbert & Heitmann, Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

The plaintiffs, Edward and Gloria Frederick, appeal from the judgment of the Superior Court (Somerset County, *Beaulieu, J.*) declaring that land owned by the defendant, Consolidated Waste Services, Inc. ("CWS"), was not subject to an easement benefitting the Fredericks' property. We affirm the judgment.

The Fredericks and CWS own adjoining properties in the Town of Norridgewock. The Fredericks' property is unimproved and serves as a woodlot. The chain of title to both parcels can be traced back to a common grantor in 1855. The deed from the common grantor to the Fredericks' predecessor in title describes the property as being bounded on the north by a town road, and the conveyance to CWS's predecessor describes land on both sides of a town road.

In 1950, Norridgewock discontinued Lagasse Road, a town road adjoining and northerly of the Fredericks' property and bounded on both sides by the CWS property.[1] As a result of the discontinuance, the Fredericks' property became landlocked. After CWS installed a padlocked cable across the discontinued road, the Fredericks filed in the Somerset County Registry of Deeds a notice of intent to prevent extinguishment of an easement in the part of Lagasse Road that ran through CWS's property. *See* 14 M.R.S.A. § 813 (1980). In a counterclaim to a complaint filed by the Fredericks against it for trespass and the cutting and carrying away of timber,[2] CWS sought a declaration that no easement existed over its land and an order to discharge the notice of intent to prevent extinguishment of an easement.

At trial, a jury determined that the Fredericks did not acquire an easement over CWS property by prescription, a finding that the Fredericks do not challenge. The parties tried to the court, without a jury, the question whether CWS's property was

---

1. The court determined that the Fredericks failed to prove that Lagasse Road was the same town road referred to in the earlier deeds from the common grantor. The court was not compelled to find otherwise.

2. The Fredericks were awarded damages against CWS on the complaint. CWS has not appealed that judgment.

burdened by an implied easement. The court concluded that the Fredericks had failed to establish that CWS's land was subject to any easement. The court entered a judgment on Count I of the CWS counterclaim declaring that the Fredericks had no easement over CWS's land and further declaring the notice to prevent extinguishment of an easement to be void and of no effect. This appeal by the Fredericks followed.

■ The Fredericks claim an easement over that portion of CWS's property that was part of the now discontinued Lagasse Road. The Fredericks acknowledge that they acquired no rights in Lagasse Road as members of the public by virtue of the town's discontinuance.[3] Nor did the discontinuance of Lagasse Road in and of itself create in the Fredericks a private easement over that part of the road running through CWS property. *See Warchalowski v. Brown*, 417 A.2d 425, 428 (Me. 1980). In order to establish easement rights over CWS property, the Fredericks must rely on their claim to a private easement that existed prior to and survived the discontinuance of Lagasse Road.

A private easement over land may be created in several ways. *See O'Connell v. Larkin*, 532 A.2d 1039, 1042 (Me.1987); *see also Brown v. Dickey*, 106 Me. 97, 100, 75 A. 382 (1909). Because there is no express grant creating an easement over CWS's land, any easement that exists must have been created by implication or by estoppel. *See O'Connell*, 532 A.2d at 1042. The Fredericks presented no evidence to establish an easement by estoppel, *see Bathport Bldg, Inc. v. Perry*, 490 A.2d 663, 665–66 (Me.1985), and we find no merit in their claim of an implied easement.

■ We have recognized two kinds of implied easements, both of which the Fredericks rely upon in their contention that their land is benefitted by an easement. The first is an easement created by strict necessity, arising when a grantor conveys a lot of land from a larger parcel, and that conveyed lot is "landlocked" by the grantor's surrounding land and cannot be accessed by a road or highway. Because of the strict necessity of having access to the landlocked parcel, an easement over the grantor's remaining land benefitting the landlocked lot is implied as a matter of law irrespective of the true intent of the common grantor. *Bowers v. Andrews*, 557 A.2d 606, 609 (Me.1989). At the time of the original conveyance of what is now the Fredericks' land from the common grantor, who also owned the land currently held by CWS, the Fredericks' land was bounded by a town road and was neither landlocked nor inaccessible. In the absence of strict necessity for an easement over the CWS parcel at the time of the severance of unity of title, the law will not imply one. *O'Connell*, 532 A.2d at 1042 n. 5; *Warchalowski*, 417 A.2d at 428. The trial court correctly rejected the Fredericks' contention that their land is benefitted by an easement of strict necessity.

■ A second type of implied easement may be created when a common grantor severs real estate, conveying part of it and retaining the balance (or conveying it to a third person), and the circumstances at the time of the conveyance denote the grantor's intent to subject the retained land (the servient estate) to an easement benefitting the conveyed land (the dominant estate). *Bowers*, 557 A.2d at 608; *O'Connell*, 532 A.2d at 1042; *Brown*, 106 Me. at 101, 75 A. 382. In order for such an implied easement to be recognized (1) the "property when in single ownership [must have been] openly used in a manner constituting a 'quasi-easement,' " (defined in *Brown*, 106 Me. at 101, 75 A. 382), as existing conditions on the retained land that are apparent and observable and the retention of which would clearly benefit the land conveyed); (2) the common grantor, who severed unity of title, must have "manifested an intent that the quasi-easement should continue as a true easement," to burden the retained land and to benefit the conveyed land; and

---

3. The road was discontinued under authority of 23 M.R.S.A. § 3004, since repealed. *See* P.L. 1975, ch. 711, § 7. 23 M.R.S.A. § 3026 (1980 & Supp.1989) now provides that unless otherwise stated, a public easement is retained in a discontinued town road. Section 3026 did not become effective until 1976, however, long after the 1950 discontinuance of Lagasse Road. *See* P.L. 1975, ch. 711, § 8 (effective July 29, 1976).

(3) the owners of the conveyed land must have continued to use what had been a quasi-easement as a true easement. *Bowers*, 557 A.2d at 608.

■ In this case, at the time of the severance of unity of title in 1855, the deeds referred to a town road adjoining the property conveyed to the Fredericks' predecessor in title and running through CWS's property. In order for the common grantor to have created a quasi-easement in that town road, he must have had some ownership interest in it at the time of the conveyance. *Dorman v. Bates Mfg. Co.*, 82 Me. 438, 447, 19 A. 915 (1890). Not only did the Fredericks fail to establish the requisite element of ownership, *see supra* n. 1, but the existence of a town way accessible to the land now owned by the Fredericks at the time of the severance of unity of title is also strongly suggestive that the common grantor had no reason, and thus had no intent, to create a private easement to burden his retained land. *See Bowers*, 557 A.2d at 609; *O'Connell*, 532 A.2d at 1043 (necessity need not be strict and absolute to imply an easement arising from a quasi-easement, but it is a circumstance bearing on the grantor's intent to create an easement). The trial court's rejection of the Fredericks' claim of an easement arising by implication from a quasi-easement is not clear error.[4]

We find no merit in the remaining contentions of the Fredericks.

The entry is:

Judgment affirmed.

All concurring.

---

**4.** The Fredericks make an additional argument that they benefit from another type of easement over CWS's land that they contend arises from a conveyance abutting a way. They argue that an easement in Lagasse Road must be implied from the references to the town road abutting what is now CWS's and the Fredericks' properties in the deeds from the common grantor. We have recognized under a theory of estoppel that easements may be created by implication when a grantor's conveyance describes land as bounded by a street or road. *Brown v. Dickey*, 106 Me. 97, 101–02 (1909). Such an easement, however, does not extend beyond the road or street abutting the grantor's land and is created only when the grantor owns the fee in the road at the time of the conveyance. *Warchalowski v. Brown*, 417 A.2d 425, 428 (Me.1980); *Brown*, 106 Me. at 101–02; *Young v. Braman*, 105 Me. 494, 497 (1909). There no requisite proof of ownership here, *see supra* note 1, and even if there had been, the easement created in the Frederick's land would have been limited to the road abutting only that land and would not have extended to that part of the road running through what is now CWS's property.